# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| NÉSTLE WATERS NORTH AMERICA, INC. | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) Case No. 3:17-cv-154 |
| | ) Judge Aleta A. Trauger |
| MOUNTAIN GLACIER LLC, | ) |
| | ) |
| Appellee. | ) |

## MEMORANDUM & ORDER

Appellant Nestlé Waters North America, Inc. ("NWNA") appeals from the January 13, 2017 Order of the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court") in the Chapter 11 case *In re: Mountain Glacier LLC*, Case No. 15-03817 (the "Order"). (Docket No. 1.) The Order grants summary judgment in favor of appellee Mountain Glacier LLC ("Mountain Glacier") as to adversary proceeding *Mountain Glacier LLC v. Nestle Waters North America, Inc.*, No. 3:16-ap-90113 (the "Adversary Proceeding"). (Docket No. 1-4.) NWNA has filed a brief in support of its appeal (Docket No. 5), to which Mountain Glacier has filed a Response in opposition (Docket No. 6), and NWNA has filed a Reply (Docket No. 8). For the reasons discussed herein, the Order will be affirmed.

## BACKGROUND & PROCEDURAL HISTORY

The key facts in this appeal are undisputed. Mountain Glacier is the reorganized debtor in the underlying Chapter 11 bankruptcy proceedings that commenced on June 3, 2015. Prior to Mountain Glacier's filing of its Chapter 11 petition, Mountain Glacier and NWNA were parties to a pending arbitration action before the Judicial Arbitration and Mediation Services in Chicago, Illinois ("JAMS"), and Mountain Glacier had asserted a counterclaim against NWNA in that

1

action (the "Claim"). The arbitration was stayed by Mountain Glacier's filing of its Chapter 11 petition and the Claim remained pending. On February 16, 2016, the Bankruptcy Court issued an order confirming Mountain Glacier's reorganization plan (the "Plan"). The Plan contains the following provisions:

- Section 2.07 defines "Causes of Action" as "all claims that the Debtor had as of the Effective Date of the Plan against any party, including, but not limited to claims against . . . Nestle Waters North America, Inc. in the litigation further described in the Debtor's Disclosure Statement." (Docket No. 2-1, p. 71.)

- Section 8.02, titled "Transfer of Assets," states: "As of the Effective Date of the Plan and except as otherwise provided herein, all Property of the Debtor will be transferred to the Reorganized Debtor free and clear of all claims, including the Causes of Action except as otherwise provided herein." (*Id*. at pp. 77-78.)

- Section 9.02, titled "Retention of Claims," states: "Pursuant to § 1123(b)(3)(B) of the Code, the Reorganized Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to §550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549, or 553(b) of the Code. To the extent permitted by applicable law, these actions may be pursued by the Reorganized Debtor after Confirmation and may be commenced or continued in any appropriate court or tribunal for the enforcement of same."

The Plan was accompanied by a disclosure statement that had been previously filed and approved by the Bankruptcy Court (the "Disclosure Statement"). The Disclosure Statement references the Claim in its "Summary of Assets" as follows:

> The Debtor also has certain claims against parties in pending litigation that were in existence prior to the commencement of this case. These matters include . . . a counterclaim asserted by the Debtor against Nestle Waters North America, Inc. in arbitration pending in Chicago, IL before Arbitrator Nan Nolan. Since the litigation of these actions were stayed as to the Debtor upon the commencement of this Chapter 11 case, these claims remain unliquidated and have unknown value.

(*Id*. at p. 63.) The Disclosure Statement also contains the following language in its section entitled "Implementation of the Plan:"

2

> Upon Confirmation, the Reorganized Debtor will retain all Property of the Estate, including Causes of Action as defined in the Plan. The Reorganized Debtor will have the power and authority to settle and compromise any Cause of Action or any Disputed Claim without further notice or Court approval.

(*Id*. at p. 7.) There is no additional information about the Claim in the Plan or the Disclosure Statement. Specifically, neither the Plan nor the Disclosure Statement includes the nature of the Claim, the factual allegations underlying the Claim, or the amount of damages being sought (or any other estimate of the value of the Claim).

Following the Bankruptcy Court's confirmation of the Plan, Mountain Glacier sought to lift the stay and resume arbitration of the Claim before JAMS.[1] In response, NWNA moved to dismiss the Claim, arguing that the Plan did not properly reserve Mountain Glacier's interest in the Claim and, therefore, Mountain Glacier is barred from pursuing the Claim on the grounds of *res judicata*. Mountain Glacier then filed the Adversary Proceeding in the Bankruptcy Court, seeking a declaratory judgment that the Claim is not barred. On January 13, 2017, the Bankruptcy Court issued the Order (Docket No. 1-4), entering judgment in favor of Mountain Glacier, along with a Memorandum Opinion in support (Docket No. 1-3 (the "Bankruptcy Court Opinion")). According to the Bankruptcy Court Opinion, the Claim is not barred by *res judicata* because the Plan sufficiently reserved its rights to pursue the Claim post-confirmation through the language quoted above.

On March 24, 2017, NWNA filed the pending appeal from the Order, arguing that the Bankruptcy Court erred in finding that the Claim had been properly reserved by the Plan.[2]

---

[1] The record reflects that the JAMS arbitration proceedings are now before Honorable Wayne R. Andersen (Ret.) rather than Arbitrator Nan Nolan. Judge Andersen, JAMS Arbitrator, has issued an Order Staying the arbitration proceedings through June 30, 2017 or resolution of this appeal. (Docket No. 9.)

[2] NWNA's brief on appeal includes a request for oral argument. The court finds that argument is not necessary and will decide the appeal based on the record, as discussed below.

(Docket No. 5.) On April 21, 2017, Mountain Glacier filed a Response in opposition (Docket No. 6) and, on May 5, 2017, NWNA filed a Reply (Docket No. 8).

## STANDARD OF REVIEW

The court has jurisdiction over this matter pursuant to the United States Code, which provides that:

> The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a); s*ee also United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1031 (6th Cir. 1999) ("Bankruptcy court orders granting summary judgment are final appealable orders and are reviewable by the district court."). In hearing an appeal from a bankruptcy court's order, the district court reviews the bankruptcy court's findings of fact for clear error and the court's conclusions of law *de novo*. *In re Rembert*, 141 F.3d 277, 280 (6th Cir. 1998); *MNBA America Bank, N.A. v. Meoli (In re Wells)*, 561 F.3d 633, 634 (6th Cir. 2009).

## ANALYSIS

The Bankruptcy Code states that "a [reorganization] plan may . . . provide for . . . the retention and enforcement by the debtor . . . of any . . . claim or interest." 11 U.S.C. § 1123(b)(3)(B). Accordingly, the Sixth Circuit has held that, when a debtor reserves a claim through a reorganization plan, such reservation will overcome any *res judicata* effect that could later bar the claim as a result of the reorganization. *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002).[3] Federal Courts of Appeal have held that the reservation provision is about providing

---

[3] It is not entirely clear from *Browning* that a reorganized debtor seeking to litigate a claim that could have been litigated prior the reorganization is always subject to a *res judicata* bar in the first place. In fact, *Browning* outlines the elements of *res judicata* in this context to specifically

4

notice to the bankruptcy creditors, not to the potential defendant. *See Harstad v. First Am. Bank.*, 39 F.3d 898, 903 (8th Cir. 1994) ("We view § 1123(b)(3) as, at least in part, a notice provision. Creditors have the right to know of any potential cause of action that might enlarge the estate – and that could be used to increase payment to the creditors.") NWNA's primary argument in this appeal is that Mountain Glacier did not sufficiently reserve the Claim under 11 U.S.C. § 1123, because the Plan and Disclosure Statement do not include the nature of the Claim, the factual allegations giving rise to the Claim, or an estimate of the Claim's value. NWNA also argues that the language regarding "Retention of Claims" in Section 9.02 of the Plan indicates an express intent not to reserve the Claim by omitting any reference to the Claim in that section. NWNA specifically notes that Section 9.02 reserves certain "causes of action" but does not refer to "Causes of Action," the term defined in the Plan to include the Claim. Because Section 9.02 is the section that purports to cover the retention of claims, NWNA asserts that this omission is fatal to Mountain Glacier's ability to now resume litigation of the Claim.

The parties spend a good amount of their briefing discussing whether "causes of action" should be read to mean the same thing as "Causes of Action," whether the difference between these terms creates ambiguity that should be resolved against Mountain Glacier as the drafter, and whether this issue is a factual question on which the court should defer to the Bankruptcy

---

include both 1) that the defendant to the post-bankruptcy claim was a party to the bankruptcy proceedings and 2) that there is an "identity of claims." In *Browning*, these elements were met because the defendant had been a creditor in the plaintiff's prior bankruptcy proceedings and because the claim against the defendant arose from the same transactions and occurrences that caused the plaintiff to file for bankruptcy. 283 F.3d at 772. Here, by contrast, it is not entirely clear that NWNA actively participated as a creditor in the bankruptcy proceedings, nor is there any basis in the record to find that the Claim is related in any way to Mountain Glacier's bankruptcy filing. Nevertheless, the court need not reach these questions because, even if *res judicata* could apply to bar the Claim from proceeding, such a bar is clearly overcome by the express reservation of the Claim in the Plan and the Disclosure Statement for the reasons discussed herein.

Court's findings rather than conduct a *de novo* review. In the end, the court finds that none of these questions need be resolved because, as the Bankruptcy Court Opinion held, the Plan expressly reserves the Claim through Section 8.02's transfer of the Claim – which was already pending – to the reorganized Mountain Glacier as an asset, and through the corresponding language in the Disclosure Statement.[4] (Docket No. 1-3, p. 14.) Section 9.02 of the Plan, which reserves other "causes of action," does not undermine this express reservation of the Claim, and the failure to reserve "Causes of Action" in Section 9.02 – a reservation which would have been redundant of Section 8.02 – is of no consequence. The provision in section 9.02, to the contrary, refers only to causes of action that Mountain Glacier had the right to pursue prior to its filing for Chapter 11 bankruptcy but had not yet filed.[5]

The only question, then, before the court is whether the information included in the Plan and Disclosure Statement is sufficient to reserve the Claim. On this issue, the court conducts a *de novo* review, as the facts regarding what is included in the Plan are not in dispute, and the question of whether this information is sufficient to reserve the Claim under 11 U.S.C. § 1123 is a strictly legal question. At the heart of this inquiry is whether the Plan provided sufficient notice to the bankruptcy creditors of Mountain Glacier's reservation of the Claim before the

---

[4] To the extent NWNA argues that the Disclosure Statement is not binding because it is inconsistent with the Plan, the court is not at all swayed by that argument. The Disclosure Statement is wholly consistent with provision 8.02 of the Plan and both clearly place creditors on notice of Mountain Glacier's intent to reserve the Claim. There is no inconsistency with the fact that Section 9.02 of the Plan does not mention the Claim, because Section 9.02 refers only to potential causes of action that had not yet been asserted by Mountain Glacier at the time the Plan was confirmed.

[5] There is disagreement between the parties as to whether the court should conduct a *de novo* review as to the proper interpretation of the Plan or whether the Bankruptcy Court's interpretation of the Plan is a factual determination that should be reviewed only for clear error. The court finds that the interpretation of the Plan is a legal question that the court properly reviews *de novo*. However, any challenge to the standard of review is purely academic, because the court wholly agrees with the Bankruptcy Court's interpretation and, thus, either standard of review supports the court's affirmance of the Order.

creditors voted to confirm the plan. NWNA relies heavily on *Browning* for the proposition that certain information – namely the factual basis of a claim and its estimated value – is required in order to reserve a claim.

While it is true that *Browning* holds that a blanket reservation of causes of action is insufficient to reserve a claim, *Browning* does not articulate any such definitive requirement about what information does, in fact, need to be included. 283 F.3d at 275. Moreover, while Browning notes the absence in the plaintiff's reorganization plan of the type of information enumerated by NWNA, *Browning* involves the plaintiff's attempt to assert a claim post-bankruptcy that had not yet been pending at the time the bankruptcy proceedings commenced or at the time the plan was confirmed, and such a claim is, therefore, arguably entirely unidentifiable without this sort of information. In the *Browning* scenario, it is far more difficult for creditors to be placed on notice that a claim even exists – let alone ascertain its potential value – without the kind of specific information such as the claim type, the potential defendant, and the underlying allegations. Here, by contrast, the Claim was identified in the Plan by naming the defendant and the forum, providing more than adequate notice to the creditors of the existence of the Claim. Likewise, the Bankruptcy Court Opinion – in finding that the Claim was sufficiently reserved – relied on *Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply, Inc., (In re Pen Holdings, Inc.)*, which states as follows:

> *Browning* does not establish a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan. Read in the context of its history, § 1123(b)(3) protects the estate from loss of potential assets. It is not designed to protect defendants from unexpected lawsuits. The words sufficient to satisfy § 1123(b)(3) must be measured in the context of each case and the particular claims at issue: Did the reservation allow creditors to identify and evaluate the assets potentially available for distribution?

316 B.R. 495, 504 (Bankr. M.D. Tenn. 2004).

7

If Mountain Glacier's creditors wanted more information about the Claim prior to voting on the confirmation of the Plan, they could have requested that information or conducted their own due diligence. They were certainly put on notice, however, of the existence of the Claim and the fact that it was being reserved, and they had the opportunity to inquire as to its potential value. In fact, a federal Court of Appeals has held that, where a plan explicitly states which claims are reserved and which are not, this language can be sufficient, even if the reservation is broadly stated, because the creditors then have "an opportunity to dicker over the language." *D&K Props. Crystal Lake v. Mut. Life Ins. Co., of New York*, 112 F.3d 257, 261 (7th Cir. 1997) (holding that a claim that was already pending prior to the bankruptcy was not reserved by the reorganization plan because it was not referenced in the plan at all).

Moreover, a case cited by NWNA, *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*, 310 B.R. 107, 120 (Bankr. N. D. Ill. 2004), held that even a reservation of an entire category of *types* of claims (without naming the potential defendants) could be sufficient under 11 U.S.C. § 1123(b)(3)(B). The Seventh Circuit has also held that:

> The language of §1123(b)(3)(B) is broad enough to encompass both those situations where a debtor is trying to preserve a potential future claim about which the affected party had no notice and the subset of claims that have already been filed (and thus are a matter of public record) but that remain unresolved. . . . While there might be some logic in requiring specific and unequivocal language to preserve claims belonging to the estate that have never been raised, the statute itself contains no such requirement.

*P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In the Matter of P.A. Bergner & Co.)*, 140 F.3d 1111 (7th Cir. 1998) (holding that the reservation of a claim not yet pending need not include naming the specific defendant, but only identifying the type of claim). Certainly, then, for claims that are already pending at the time a reorganization plan is confirmed, there is no basis for requiring the plan to include anything beyond the defendant and the forum in order to

8

reserve the claim.  Finally, none of the cases cited by NWNA holds that a claim that was already pending prior to the bankruptcy and was specifically named in the reorganization plan is not reserved under 11 U.S.C. 1123 § (b)(3)(B) for lack of additional information.[6]  In addition, none of the cases cited by NWNA specifically holds that any particular type of information beyond the defendant and the forum is required in order to reserve an already pending claim.  Nor is the court aware of any precedent to support such a heightened standard.

Accordingly, the court finds that the Plan sufficiently reserves the Claim under 11 U.S.C. § 1123(b)(3)(B), and Mountain Glacier is not barred by *res judicata* from pursuing the Claim at this time.

## **CONCLUSION**

For the foregoing reasons, the January 13, 2017 Order of the United States Bankruptcy Court for the Middle District of Tennessee in *In re: Mountain Glacier LLC*, Case No. 15-03817 is hereby **AFFIRMED**.

It is so **ORDERED**.

Enter this 18th day of May 2017.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] *See Kaye v. Carlisle Tire & Wheel Co.*, No. 3:07-00336, 2008 WL 821521 (M.D. Tenn. Mar. 27, 2008) (claim was not reserved because it was not referenced in the plan or disclosure statement *at all*); *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) (claim was not reserved because there was no language indicating reservation); *Mickey's Enterprises, Inc. v. Saturday Sales, Inc. (In re Mickey's Enterprises, Inc.)*, 165 Bankr. 188, 193 (Bankr. W.D. Tex. 1994) (claim was not referenced at all); *Official Comm. of Unsecured Creditors of Crowley, Milner & Co. v. Callahan (In re Crowly, Milner & Co.)*, 299 B.R. 830, 850 (Bankr. E.D. Mich. 2003) (claims not referenced at all).